UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

**TESSY PLASTICS CORP.,**

                *Plaintiff,*

    -vs-

**CIRKUL, INC.,**

                *Defendant.*

**COMPLAINT**

Case No. 5:23-CV-1502 (AMN/ATB)

Jury Trial Demanded

---

Plaintiff, by its attorneys, Barclay Damon LLP, as and for its Complaint against Defendant, alleges as follows:

## PARTIES

1. Plaintiff Tessy Plastics Corp. ("Tessy") is a corporation formed under the laws of the State of New York with a business address of 700 Visions Drive, Skaneateles, New York.

2. Defendant Cirkul, Inc. ("Cirkul") is a corporation formed under the laws of the State of Delaware with a business address of 4914 Joanne Kearney Boulevard, Tampa, Florida.

## JURISDICTION AND VENUE

3. This litigation is a civil action over which this Court has original diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) based on diversity of the parties and the amount in controversy.

4. The amount in controversy in this matter exceeds $75,000.

5. A substantial portion of the events giving rise to this action occurred within the County of Onondaga, State of New York, within the Northern District of New York, including that the purchase orders at issue were received and performed by Tessy at its facility within the District;

27349830.2

all work to design, manufacture, and qualify the tools was performed in the District; all Tessy personnel who negotiated with Cirkul maintain their offices in the District and frequently engaged in those negotiations from those offices; and the constructed production line Tessy planned to use to manufacture the parts at volume is in the District. Therefore, venue is proper in this District pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

**Introduction**

6. Tessy is a custom contract manufacturer specializing in plastics processing, complex assembly, precision tooling, and automation design and build. Tessy is headquartered in Onondaga County, New York, with global operations and over 1,900 employees. Tessy's primary business is the development and production of plastic parts and components for brand-name consumer and medical products.

7. Cirkul was founded in or about 2018, and sells water bottles with an innovative design providing for a flavor delivery system in the bottle lid. Beginning in 2021, Cirkul reportedly experienced explosive growth after its products were highlighted on the TikTok® social media platform.

8. In addition to direct to consumer online sales, Cirkul's products are sold through retailers, and, as of 2022, were reportedly one of the top selling products in Walmart's home department.

9. In June 2023, in an apparent attempt to capitalize on the rising demand for its products, Cirkul underwent a $70 million Series C financing, reportedly bringing the company's growth to $1 billion.

10. As Cirkul's CEO and co-founder Garrett Waggoner explained in a press statement announcing the financing, "[t]he sales velocities at Walmart and Bed, Bath & Beyond have been incredible especially while maintaining strong growth for our D2C business. This fundraise will help us continue to capitalize on the strong customer demand for our products which are tailor-made for today's consumer."

11. In or about June 2022, Cirkul approached Tessy, for the second time since April 2021, to inquire of Tessy's desire to design and qualify molds and other tools to manufacture the plastic parts that compose Cirkul's unique water bottle product.

12. Tessy's typical customers are established, nationally known consumer product brands with multiple product lines for which Tessy manufactures. Although Tessy was intrigued by the explosive growth Cirkul was reporting at the time, it required additional information and assurances from Cirkul before it would agree to enter into a relationship with Cirkul to design and qualify its molds or manufacture its plastic parts.

13. Initially, Cirkul requested Tessy to provide quotes for an ultimate 100 million parts per year, and this quote was submitted on or about June 15, 2022.

14. Thereafter, from July to September 2022, Tessy and Cirkul engaged in discussions wherein Cirkul's executives repeatedly and unequivocally assured Tessy that it would be Cirkul's sole-source of the plastic parts, that it would order over two hundred million parts per year after Tessy designed and qualified the molds on a manufacturing line Tessy would build at its location

for Cirkul, and that Cirkul was adequately capitalized and had projected consumer demand that more than supported the projections it provided Tessy.

15. Based on these repeated assurances, Tessy agreed to make a multi-million dollar investment to build out the manufacturing line to supply Cirkul's plastic parts at the volumes Cirkul required Tessy to commit to provide, and Cirkul began to issue purchase orders for the design, manufacture, and qualification of the specific molds needed to manufacture the parts.

16. Unfortunately, Cirkul has failed to live up to its promises.

(a) First, Cirkul, in fact, had misrepresented that Tessy was the sole-source supplier. Rather, Cirkul had entered into a similar relationship with a separate supplier unbeknownst to Tessy.

(b) Second, Cirkul failed to meaningfully participate in the mold development process throughout, causing delays and cost escalations for Tessy.

(c) Third, in a transparent attempt to renege on its commitments, in mid-2023, Cirkul concocted an allegation that Tessy had leaked a trade secret of Cirkul's. In fact, a third party had shown Tessy photographs of a broken mold at Cirkul's competing supplier. Although the broken mold had apparently become industry fodder, it was not Tessy who shared the photograph. Moreover, Tessy promptly reported it to Cirkul so that Cirkul could address the circulating rumors. Nevertheless, Cirkul accused Tessy of leaking trade secrets and made a series of demands of Tessy that were not contained in any contracts between the parties. Ultimately, on November 1, 2023, citing the concocted trade secret allegation, Cirkul repudiated its agreements with Tessy and demanded Tessy stop working on the tool design, manufacture, and qualification.

(d) Fourth, Cirkul has become seriously delinquent in paying Tessy's invoices for already completed work under the Cirkul Purchase Orders. The Purchase Orders provided for payments within 60 days of invoice issuance. To date, the amount of outstanding invoices totals $4,633,255.11  To date, the amount past due is $3,892,395.31. Cirkul, through its counsel, has indicated it will not pay the invoices until there is a separation agreement between the parties.

(e) Finally, and most significantly, Cirkul, by its repudiation of the outstanding purchase orders, is attempting to avoid placing parts orders at volume notwithstanding its promises in that regard, which induced Tessy to invest millions of dollars to build a manufacturing line dedicated to Cirkul at Tessy's facility.

**Negotiations Between Tessy and Cirkul**

17. In or about May 2022, Cirkul approached Tessy regarding the design, manufacture, and qualification of production molds including issuance of a formal request for quotation on or about May 20, 2022.

18. Initially, Tessy bid on one set of production molds. The initial bid was submitted on or about June 15, 2022.

19. A negotiation between Cirkul and Tessy ensued, during which Cirkul repeatedly requested that Tessy consider designing, manufacturing, and qualifying two sets of molds.

20. More specifically, on or about July 29, 2022, Elliot Kastner, Cirkul's Director of Supply Chain, requested that Tessy consider two sets of molds because Cirkul intended for Tessy

- 5 -

to produce two hundred million parts per year after Tessy designed, manufactured, and qualified the molds.

21. Understanding that Cirkul was not as established as Tessy's typical name-brand customers, Tessy asked Cirkul if they would consider jointly investing with Tessy in the other equipment needed to build out the manufacturing line to support the molds, including presses, robots, and other capital improvements

22. After Cirkul indicated it could not invest in production line beyond commissioning the molds, the negotiation evolved to discuss a sole-source and volume commitment from Cirkul to Tessy.

23. Thereafter, from the end of July through August 2022, Mr. Kastner of Cirkul also told Sean Cooper of Tessy that the bid process involved only Tessy and a competitor named Technimark. Technimark dropped out of contention near the end of the bidding process, and Kastner informed Sean Cooper of this fact.

24. Although Cirkul never explained why Technimark dropped out of the bidding process, Mr. Kastner and others at Cirkul affirmatively represented that the two mold production line was now solely a Tessy project and that Cirkul required the additional capacity from Tessy.

25. Tessy explained its investment and payback period to Cirkul's executive team, and Cirkul again confirmed everything was realistic and that Tessy could rely on it in proceeding to make the investments.

26. Based on Cirkul's above representations, Tessy submitted its proposal. Soon thereafter, on or about August 16, 2022, Sean Cooper, Tessy's Sales Manager; and Joe Whitlock, Tessy's Cost Excellence Manager traveled to Cirkul's office in Tampa, Florida, and met with a

large Cirkul team, including CEO Garrett Waggoner, Mr. Kastner, and several other Cirkul executives.

27. At that meeting, Garrett Waggoner, CEO of Cirkul, confirmed Tessy was the only molder who was or would be used for this project and it was Cirkul's full intention to get Tessy's volumes up to 200 million units per year to support both sets of molds.

28. The focus of the meeting became a discussion of how Tessy should achieve Cirkul's requirement to put the two sets of molds into production as quickly as possible. Cirkul representatives, including Waggoner, Kastner and Urbanik indicated that Cirkul needed Tessy's production line running to allow Cirkul to meet its ever increasing commitments to Walmart, and that Tessy was the only molder who could achieve these volumes for Cirkul. Tessy was informed no additional tools were in the process of being built, and Cirkul had no intention of expanding their portfolio.

29. Shortly after the meeting at Cirkul, on or about August 30, 2022, the Cirkul team, including Mr. Kastner and others, traveled to Tessy's facility in Onondaga County, New York, and reviewed Tessy's facilities and capabilities in person.

30. Immediately after the August 30, 2022, meeting, Mr. Kastner sent an email to confirm the relationship would move forward.

31. Cirkul had commissioned Tessy to design, manufacture, and qualify 64-cavity tools, which are highly specialized and complicated injection molds that can create 64 parts with every press. Because the design, manufacture, and qualification process takes a significant amount of time, and Cirkul required speed to the market, Cirkul also explored the possibility of Tessy manufacturing sixteen cavity tools and requested a bid on capital investment and piece pricing,

- 7 -

which Tessy submitted on or about September 1, 2022. Cirkul's stated theory was that the 16 cavity molds were less complicated and could have been put into service while Tessy continued to work towards qualification of the 64 cavity molds such that the smaller molds could have acted as a bridge to full production capacity.

32. Soon thereafter, Cirkul indicated they had abandoned the plan for the smaller molds and directed Tessy to move forward with the larger 64 cavity molds as planned, and that Tessy would have Cirkul's full support to get to production as they were depending solely on Tessy. This conversation reinforced to Tessy that it was the sole source supplier to Cirkul of parts.

33. In addition, there were numerous phone calls between June 2022 and September 2022, between Messrs. Vann and Cooper of Tessy with Mr. Kastner and others at Cirkul during which Cirkul representatives repeatedly stated, in sum and substance, "all our eggs are in your basket" and "the further success of this product hinges on Tessy's ability to get into production."

**Tessy's Performance of Its Obligations**

34. Thereafter, based on Tessy's accepted proposal for two sets of molds intended to produce two hundred million parts per year once the molds were qualified, Cirkul began issuing purchase orders for the design, manufacture, and qualification of the molds.

35. Tessy accepted the issued purchase orders and performed its work thereunder. As required under the terms of the purchase orders, Tessy issued invoices as each phase of work was completed.

36. The purchase orders provide for payment within 60 days after an invoice is issued.

37. To date, Cirkul has issued purchase orders totaling $19,254,669 for various work needed to design, manufacture, and qualify the production tools.

38. To date, Tessy has completed the work and issued invoices in excess of $13,845,925.

39. To date, Cirkul has only paid Tessy $9,438,278 as payment of the outstanding invoices.

40. In excess of $3,892,395.31 is past due, and Cirkul has never objected to those invoices.

41. In performing the work under the purchase orders, and in reliance on Cirkul's promises that Tessy would be a sole-source supplier and that Cirkul would place orders for two hundred million parts per year, Tessy has expended $25,613,302 in designing, manufacturing, and qualifying the various tools.

42. In addition to this direct expenditure, Tessy has invested well in excess of $10,000,000 for other capital improvements needed to support the Cirkul production line, including silos, mold presses, robots, and electrical and plumbing modifications.

**Cirkul's Ongoing Promises**

43. Rather than come clean about its apparent change in plans for the volumes Cirkul would ultimately order from Tessy, Cirkul doubled-down on its representations in that regard through 2023.

44. For example, Mr. Kastner sent Mr. Cooper an email on or about September 2, 2022, stating:

- 9 -

> "Cirkul needs Tessy to support the longest and most deferred possible capital schedule. We are all in with you guys, but to meet the schedule, support growth and customer demand until those production tools are up, we need assistance."

and

> "Cirkul needs us to continually work on the EOY 2023 ramp timeline with aggression through next year to ensure no slip, and to pull in where possible"

45. As another example, on or about March 30, 2023, Nick Lopez, a Cirkul Supply Chain Associate, communicated to Ethan Suttner of Tessy, a ramp plan for the forthcoming volume orders, which scheduled out planned orders from a start of production starting in or about October 2023, and scheduled out for over a year by the week.

46. The spreadsheet Mr. Suttner provided includes the following to confirm expected volumes well in excess of two hundred million in the first year following the manufacturing line being placed in service.

| Planned arrivals | Tool ID & SOP | Week26 | Week40 | Week41 | Week42 | Week43 | Week44 | Week45 | Week46 | Week47 | Week48 | Week49 | Week50 | Week51 | Week52 | Week1 | Week2 | Week3 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 9/25 | 10/2 | 10/9 | 10/16 | 10/23 | 10/30 | 11/6 | 11/13 | 11/20 | 11/27 | 12/4 | 12/11 | 12/18 | 12/25 | 1/1 | 1/8 | 1/15 |
| Cartridge Base | 6198 - 11/27/236199 - 1/9/24 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1,096,704 | 1,316,045 | 1,535,386 | 1,645,056 | 1,754,726 | 1,864,397 | 1,974,067 |
| Flip Cap | 6206 - 11/29/236207 - 1/18/24 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1,172,476 | 1,406,972 | 1,641,467 | 1,758,714 | 1,875,962 | 1,993,210 |
| Flavor Adjuster | 6204 - 9/20/236205 - 10/25/23 | 0 | 1,172,476 | 1,406,972 | 1,641,467 | 1,758,714 | 1,875,962 | 3,165,686 | 3,517,429 | 3,869,172 | 4,103,667 | 4,220,915 | 4,338,162 | 4,455,410 | 4,572,657 | 4,689,905 | 4,689,905 | 4,689,905 |
| Nozzle | 6200 - 12/14/236201 - 1/18/24 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1,135,320 | 1,362,384 | 1,589,448 | 1,702,981 |
| Cone | 6202 - 11/10/236203 - 12/18/23 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1,366,233 | 1,639,480 | 1,912,726 | 2,049,349 | 2,185,973 | 3,688,829 | 4,098,699 | 4,508,569 | 4,781,815 |
| Valve Retainer | 6208 - 10/12/23 | 0 | 0 | 0 | 0 | 2,051,088 | 2,461,305 | 2,871,523 | 3,076,631 | 3,281,740 | 3,486,849 | 3,691,958 | 3,897,067 | 4,102,175 | 4,102,175 | 4,102,175 | 4,102,175 | 4,102,175 |
| Cage | Cage Pilot 1 - 06/12/23 Cage Pilot 2 - 09/04/23 | 2,283,886 | 2,351,059 | 2,418,232 | 2,485,405 | 2,552,579 | 2,619,752 | 2,686,925 | 2,686,925 | 2,686,925 | 2,686,925 | 2,686,925 | 2,686,925 | 2,686,925 | 2,686,925 | 2,686,925 | 2,686,925 | 2,686,925 |
| | | | 60,968,752 | 73,162,544 | 85,356,284 | 91,453,128 | 97,550,024 | 164,615,672 | 182,906,308 | 201,196,944 | 213,390,684 | 219,487,580 | 225,584,424 | 231,681,320 | 237,778,164 | 243,875,060 | 243,875,060 | 243,875,060 |

47. In fact, it is impossible to achieve the pace of 200 million parts per year without the two sets of molds Cirkul commissioned to run at Tessy.

27349830.2

48. In other words, Cirkul's actions continued to reinforce that it required Tessy to invest in a production line capable of these volumes, and Tessy did so in reliance on Cirkul's continued representations in this regard.

**Cirkul's False Promises Are Revealed**

49. In or about June 2023, Cirkul began to reveal that its prior representations had been false.

50. For example, for the first time, on or about June 13, 2023, Cirkul Chief Operating Officer Phil McKeating revealed on a conference call that Cirkul had also commissioned 32 cavitation molds from Westfall Technik ("Westfall") and had begun to ramp them up for production purposes. Mr. McKeating further stated that in fact, despite prior promises to Tessy that it was a sole-source supplier, Cirkul had kicked off the Westfall project before it awarded Tessy its work to create a line of two sets of 64 cavitation molds.

51. The stated purpose of the June 13, 2023 conference call, which Mr. McKeating and Mr. Kastner attended for Cirkul, was for Cirkul to inform Tessy that Cirkul would be imposing a "production pause" because Cirkul alleged that Westfall beat Tessy to production. In fact, Westfall had not started production on a full set of Cirkul molds.

52. Cirkul further stated that Tessy would be put into production after Cirkul terminated its relationship with a third molder.

53. All of this was contrary to every representation Cirkul had made before June 13, 2023 regarding Tessy's sole-source status and that Tessy would reach an annual pace of 200 million part volume orders by 2024 just a few months prior.

54. Upon information and belief, Cirkul had made those prior misrepresentations to induce Tessy to invest in the creation of the production line for Cirkul.

55. Upon information and belief, Cirkul knew the misrepresentations would cause Tessy to invest in the creation of the production line for Cirkul.

**Cirkul's Failure to Participate in the Development of Molds**

56. Cirkul has further breached its explicit and implied contractual obligations to Tessy by failing to communicate regarding open issues in the ongoing development, manufacture, and qualification of 13 molds.

57. As Cirkul is fully aware, this project was a significant undertaking with major investments to be considered requiring real-time communication between the parties if it was to be successful and on time.

58. As a result, the parties previously agreed to hold weekly meetings at 10:00 a.m. every Thursday to discuss ongoing issues and ensure that tools could qualify and production timelines could be met.

59. Cirkul, inexplicably, stopped attending these meetings after August 17, 2023.

60. Cirkul has similarly failed to timely respond (and sometimes has not responded at all) to numerous inquiries from Tessy regarding open items and questions, and unreasonably delayed providing approvals.

61. Cirkul's failure to engage in good faith to complete this project has and will continue to materially harm Tessy, and is a further breach by Cirkul.

**Cirkul's Repudiation and Failure to Provide Adequate Assurances**

62. Rather than face that it had fraudulently induced Tessy to invest, Cirkul proceed to invent an alleged trade secret violation by Tessy.

63. In a series of letters during August to November 2023, Cirkul and its counsel have alleged Tessy improperly revealed certain issues that Cirkul believed were trade secrets.

64. However, Tessy never disclosed any trade secrets and confirmed as much repeatedly to Cirkul.

65. Unrelenting, on November 1, 2023, Cirkul communicated through counsel that because of the alleged trade secret violation, Cirkul would be moving "current business to alternative suppliers."

66. Given the significant outstanding and past due invoices, Tessy demanded adequate assurances under UCC § 2-609(1) that Cirkul would fully perform in accordance with the parties' agreements.

67. To date, Cirkul has provided no such assurances.

## FIRST CAUSE OF ACTION
(*Breach of Agreement*)

68. Plaintiff repeats and realleges all of the allegations set forth above as if more fully set forth herein.

69. Cirkul's acceptance of Tessy's proposal to create two complete sets of 64 cavity production molds in exchange for a promised volume orders exceeding two hundred million parts per year constitutes a binding agreement between Cirkul and Tessy.

70. Pursuant to the agreement, Cirkul had an obligation to participate in good faith in the development of the two sets of production molds and to begin to place orders at an annualized volume exceeding two hundred million parts per year.

71. Tessy had an obligation to develop, manufacture, and qualify the molds and to make the other capital investments needed to create the production line so that it would be ready for volume production.

72. Tessy has fulfilled its obligations.

73. Cirkul has repudiated the agreement and has failed to perform despite due demand.

74. As a result of Cirkul's breaches of the agreement, Tessy has been damaged in an amount to be determined at trial, in addition to equitable and declaratory relief to be determined.

**SECOND CAUSE OF ACTION**
(*Breach of Purchase Orders*)

75. Plaintiff repeats and realleges all of the allegations set forth above as if more fully set forth herein.

76. In addition to overall agreement between Cirkul and Tessy, each Purchase Order Cirkul issued and Tessy accepted is a separate contract.

77. To date, Cirkul has issued purchase orders totaling $19,254,669 for various work needed to design, manufacture, and qualify the production tools.

78. To date, Tessy has completed the work and invoiced for in excess of $13,845,925.

79. To date, Cirkul has only paid Tessy $9,438,278 as payment of the outstanding invoices.

80. In excess of $3,892,395.31 is past due, and Cirkul has never objected to those invoices.

81. As a result of Cirkul's breaches of the purchase orders, Tessy has been damaged in an amount to be determined at trial, in addition to equitable and declaratory relief to be determined.

## THIRD CAUSE OF ACTION
(*Account Stated*)

82. Plaintiff repeats and realleges all of the allegations set forth above as if more fully set forth herein.

83. To date, Tessy has completed the work under certain purchase orders providing for payment within 60 days of invoicing.

84. To date, Tessy has invoiced for in excess of $13,845,925.

85. To date, Cirkul has only paid Tessy $9,438,278 as payment of the outstanding invoices.

86. As of the date of this Complaint, $$3,892,395.31 is past due, 60 days having elapsed from the dates of the invoices.

87. Cirkul has never objected to those invoices or disputes their correctness.

88. As a result of Cirkul is liable in the amount of the past due invoices plus interest at the statutory rate through the date of payment.

## FOURTH CAUSE OF ACTION
(*Fraudulent Inducement*)

89. Plaintiff repeats and realleges all of the allegations set forth above as if more fully set forth herein.

90. Among other promises, Cirkul repeatedly represented to Tessy the following:

(a) Tessy would be a sole-source supplier to Cirkul of parts if Tessy designed manufactured, and qualified two 64 cavity molds and installed them in a production line capable of an annualized volume of at least two hundred million parts per year.

(b) Tessy would receive parts orders in an annualized volume of two hundred million parts per year following qualification of the molds.

91. Upon information and belief, Cirkul knew Tessy relied on these representations in agreeing to proceed to design, manufacture, and qualify the molds, and to make the capital investments necessary to support volume production.

92. Cirkul's representations were false.

93. Upon information and belief, Cirkul repeated the representations throughout the project and up to June 13, 2023, knowing that Tessy was continuing work in reliance on the representations.

94. As a result of Cirkul's misrepresentations, Tessy has been damaged in an amount to be determined at trial, in addition to equitable and declaratory relief to be determined.

27349830.2

**WHEREFORE,** Plaintiffs demand a Judgment of this Court in their favor against Defendant for:

a. On the First Cause of Action, damages in an amount to be determined at trial, and equitable and declaratory relief to be determined;

b. On the Second Cause of Action, damages in an amount to be determined at trial, and equitable and declaratory relief to be determined;

c. On the Third Cause of Action, damages in an amount to be determined a trial, and equitable and declaratory relief to be determined;

d. On the Fourth Cause of Action, rescission of the Operating Agreement and the Subscription Agreement;

e. The attorneys' fees, costs and disbursements of this action; and

f. Such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues that are so triable.

**Dated:** November 29, 2023        **BARCLAY DAMON LLP**

By: _____
David G. Burch, Jr.

*Attorneys for Plaintiffs*
Office and Post Office Address
125 East Jefferson Street
Syracuse, New York 13202-2078
Telephone (315) 425-2716

27349830.2